CATERPILLAR TRACTOR CO., Appellant, *v.* THE INDUSTRIAL COMMISSION *et al.* (Jean L. Hoffman, Appellee).

Fourth District (Industrial Commission Division)   No. 4—84—0097WC

Opinion filed May 21, 1984.—Rehearing denied July 9, 1984.

Forrest D. Serblin, of Peoria, for appellant.

Warren E. Danz, P.C., of Peoria, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Jean L. Hoffman, claimant, sought workers' compensation benefits for injuries sustained while she was employed by Caterpillar Tractor Company. An arbitrator awarded Hoffman, *inter alia*, permanent disability to the extent of 20% loss of use of the left hand and 10% loss of use of the right hand. Both parties petitioned for review before the Industrial Commission, which affirmed the arbitrator's award. Caterpillar sought review in the circuit court of Woodford County by writ of *certiorari*. The court affirmed the decision of the Commission. Caterpillar appeals.

The sole issue on appeal is whether the Commission's finding that Hoffman's bilateral carpal tunnel syndrome was causally related to the work accident is against the manifest weight of the evidence.

Hoffman testified before the arbitrator that on August 21, 1978, she was employed by Caterpillar, hooking steel shoes onto a conveyor line. As a wooden skid loaded with 105-pound shoes came down the line, the skid broke; the shoes fell away from her but pushed the skid toward her. She bent over and shoved the skid, with both palms upright, away from her to prevent it from striking her. The skid hit her left shin, breaking the skin.

Hoffman told her supervisor that she was injured and that she did not need any treatment, but he insisted that she report to first aid. She had a ⅛-inch abrasion on her left shin, to which the company nurse applied medication and a bandage. Hoffman did not complain about any injuries to other parts of her body. She returned to her job and worked the balance of her shift.

The next day, Hoffman noticed stiffness in her neck and sought treatment from Dr. C.T. Kearney, her family physician. She complained of a stiff left side of her neck and swollen hands and fingers. Hoffman returned to Dr. Kearney on five more occasions within a one-month period. At the September 1 appointment, Hoffman told the doctor about the swelling in her hands, but he said he did not know what it could be and that it would eventually go away. On September 16, 1978, he released her from treatment with a final diagnosis of traumatic neuromyositis of the dorsum of the neck.

Dr. Alfred Chione, a company physician, testified at the hearing that he examined Hoffman on September 1, 1978, at which time she complained of neck pain, but had no complaints of pain in any other parts of her body.

When Hoffman returned to work, albeit with restrictions, on September 18, 1978, she noticed swelling and pain in her hands. She

soaked her hands in warm water at home. After the death of her physician, Dr. Kearney, she visited Dr. Ronald Meyer on November 7, 1978, complaining of pain, swelling and numbness in her hands which had been present for approximately one month. Dr. Meyer admitted Hoffman to St. Francis Hospital on November 14, 1978, and diagnosed her condition as "bilateral carpal tunnel syndrome, worse on the right." He then referred her to Dr. John Henderson, a neurosurgeon, who initially examined her on December 4, 1978, and subsequently performed surgery to decompress the median nerves in the carpal tunnels of both hands. Hoffman continued to complain of swelling, pain and weakness in her hands.

At the hearing before the arbitrator, Hoffman presented the evidence depositions of Dr. Meyer and Dr. Horatio Rivero. Dr. Rivero testified that he examined Hoffman on February 16, 1979, and discovered numbness in some of her fingertips and some stiffness in her hands. In response to a hypothetical question incorporating the facts of the accident and Hoffman's medical history, Dr. Rivero stated that there was a causal connection between the work accident and the carpal tunnel syndrome. He described this case as one of insidious onset of symptoms, in which the swelling may take several weeks before it harms the nerve, thereby causing the symptoms of carpal tunnel syndrome.

Dr. Meyer testified, in response to a hypothetical question, that it is possible that the single incident of trauma brought about the onset of carpal tunnel syndrome. He further stated that with a pushing type of trauma there is usually quite a delay between the injury and the degree of symptoms for which the injured party will seek medical attention, and with a hyperextension type of trauma he would expect some symptoms following the injury.

On Commission review, Caterpillar introduced the deposition of Dr. Henderson. When asked a hypothetical question, he stated that he really did not know if Hoffman's bilateral carpal tunnel syndrome was related to the accident. He did state, however, that a single incident of blunt trauma can cause carpal tunnel syndrome, but that he would expect some symptoms to appear shortly thereafter. He concluded that he "would find it hard to relate [Hoffman's] one episode" of blunt trauma to the palms of her hands to carpal tunnel syndrome if, in fact, she exhibited no symptoms until six weeks after the accident. When asked if Hoffman could develop complaints relating to carpal tunnel syndrome up to two months after direct trauma, Dr. Henderson stated he supposed she could if there was hemorrhaging in the canal or in the palm. He further testified that

his handwritten notes from his initial examination of Hoffman indicated that she had the pain and swelling in her hands since "approximately August '78."

Caterpillar argues that the finding of the Commission that Hoffman's carpal tunnel syndrome was causally related to the work accident is contrary to the manifest weight of the evidence.

■■ It is a function of the Industrial Commission to determine "whether there is a causal connection between the claimant's injuries and the employment" and to choose between conflicting medical evidence. (*Domagalski v. Industrial Com.* (1983), 97 Ill. 2d 228, 236.) In making these determinations, it is solely within the province of the Commission to judge the credibility of witnesses, draw reasonable inferences from the testimony, and determine the weight the evidence is to be given. (*Steiner v. Industrial Com.* (1984), 101 Ill. 2d 257.) The fact that this court or the circuit court might have drawn different inferences from the evidence is not relevant since a reviewing court "will not disregard or reject permissible inferences drawn by the Commission" nor will it substitute its own judgment for that of the Commission unless its findings are contrary to the manifest weight of the evidence. *Castaneda v. Industrial Com.* (1983), 97 Ill. 2d 338, 341.

Caterpillar first asserts that Hoffman's carpal tunnel syndrome was unrelated to the work accident since she exhibited no sudden breakdown or physical changes to her hands or wrists following the accident. A review of the record reveals some question as to when Hoffman first exhibited symptoms of the condition. Hoffman testified that she complained to Dr. Kearney of swollen hands and fingers on August 22, 1978, the day after the accident. Dr. Meyer testified that when he initially examined Hoffman on November 7, 1978, she complained of swelling, pain and numbness in her hands, especially the right hand, and said that the condition had been present for approximately one month and that it had been associated with an accident at work in which she injured her neck. Dr. Henderson testified that when he initially examined Hoffman in December 1978, she told him that she had pain and swelling in her hands since approximately August 1978.

Moreover, the experts agree that it is possible that, in some situations, the symptoms of carpal tunnel syndrome may not appear until weeks or months after the trauma to the hands. Consequently, even if Hoffman first noticed the symptoms in October rather than August, the Commission could reasonably infer that the hand injury was causally related to the accident. The fact that Hoffman may not

have complained about pain or swelling in her hands immediately following the work accident is not sufficient evidence to overcome the inference drawn by the Commission.

Caterpillar also maintains that the medical opinions relied upon by Hoffman to establish a causal relationship were based on speculation, mere possibilities and unproven assumptions, rather than factual evidence. All three doctors testified in response to a hypothetical question in their evidence depositions. Dr. Rivero responded that there was a causal connection between the work accident and the carpal tunnel syndrome; Dr. Meyer stated that it was possible that the single incident of trauma caused the condition; and Dr. Henderson stated that a single incident of blunt trauma can cause bilateral carpal tunnel syndrome but that he "would find it hard to relate" Hoffman's episode to the condition.

■■ ■ It is not necessary for a medical expert witness to testify positively as to the cause of an injury, despite any objection that his or her testimony is inconclusive or speculative. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18.) A finding of a causal connection may be based on a medical expert's opinion that an accident "could have" or "might have" caused an injury. *Mason & Dixon Lines, Inc. v. Industrial Com.* (1983), 99 Ill. 2d 174, 182.

■■ We conclude that there was sufficient evidence from which the Commission could find a causal connection between the work accident and the carpal tunnel syndrome. Accordingly, its decision is not contrary to the manifest weight of the evidence and will not be disturbed.

For the reasons stated, the judgment of the circuit court of Woodford County is affirmed.

Affirmed.

McNAMARA, BARRY, WEBBER and KASSERMAN, JJ., concur.