GENERAL ELECTRIC COMPANY, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Marjorie Dixon, Appellee and Cross-Appellant).

Fourth District (Industrial Commission Division) Nos. 4—84—0107WC through 4—84—0109WC, 4—84—0111WC through 4—84—0114WC cons.

Opinion filed November 27, 1984.—Rehearing denied January 11, 1985.

Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., of Danville (John F. Martin, of counsel), for General Electric Co.

James J. Marszalek, of Chicago, for Marjorie Dixon.

JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Marjorie Dixon, filed an application for adjustment of her claim under the Workers' Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) for injuries suffered while she was employed by respondent, General Electric Company (General Electric). An arbitrator awarded benefits for temporary total disability, finding that Dixon's condition had not yet reached permanency. The Industrial Commission set aside the arbitrator's award and substituted in its stead, *inter alia*, an award for a more lengthy period of temporary total disability and an award for the permanent and complete loss of the use of each arm to the extent of 25%. The Industrial Commission

also found an injury to the cervical area of Dixon's spine. On review, the circuit court of Vermilion County remanded the cause to the Industrial Commission with instructions to make more specific findings of fact. In a second decision, the Industrial Commission again rendered an award for permanent and total loss of each arm to the extent of 25%. The circuit court of Vermilion County set aside the award for permanent and total loss of the use of each arm and remanded the cause for consideration as to what award, if any, should be made with respect to the injury to the cervical area of the spine. On remand, the Industrial Commission, *inter alia*, found Dixon to be permanently partially disabled to the extent of 12%. The circuit court of Vermilion County confirmed the decision of the Commission. From this decision General Electric appeals and Dixon has perfected a cross-appeal.

Dixon's application for adjustment of her claim, filed February 19, 1976, states that the "accident" occurred on or about July 31, 1975. Her employment was described therein as lifting and pulling racks, and the injury is described as injury of the left upper extremity and shoulders.

Dixon was the sole witness at the June 14, 1977, hearing before the arbitrator. She testified as follows: She had worked for General Electric for 10 years as of October of 1975. She ordinarily worked on second shift. At the time of the injury, she was on the first shift, doing whatever job needed to be done on a given day, so that her duties varied. On July 31, 1975, a Thursday, she was "racking" as the replacement of an absent employee. Asked what "racking" involved, Dixon replied: "Lifting, we had a rack that holds seven units on a rack. And I had to rack about 46 to 4800 a day." Each unit weighed approximately 15 pounds. On that day she began "giving out" and dropped some units to the floor. She asked for help, but none was available. She experienced pain while working Friday, the next day. She took Excedrin, which she "always" carried in case of headache. Her testimony is unclear as to whether she felt pain on Thursday. On Saturday, she was awakened by pain in her right hip, and "everything went numb on me." She telephoned the plant doctor and arranged to be seen by him on Monday.

Asked to explain what job she was doing when injured, Dixon testified that she was "pushing on Friday, and this happened Saturday morning, but it come on me as a result from both lifting and pushing as I put down there [in the statement of claim for benefits]. *** I was racking Thursday, when she was off. And he put me to work in her place, and Friday I was pushing the units after doing all that heavy

lifting, so Saturday morning I had a reaction, early Saturday morning."

The plant doctor treated Dixon for one week, then suggested that she see her family doctor. Meanwhile, she was returned to second shift at work, where she did jobs she could do while seated. She testified that she missed no work time during the next two weeks but that she could not perform her work well. According to Dixon's testimony, she subsequently saw several other doctors, and medical records in evidence indicate that she was seen by other doctors. Dixon subsequently underwent surgery for both hands for what is elsewhere described as carpal tunnel syndrome, the left hand in March 1976, the right in June 1976. She testified that as of the date of the hearing she continued to experience discomfort involving her back, shoulders, left leg, and both arms and hands. She stated that she did not have these symptoms prior to July 31, 1975, and that she had not worked since August of 1975.

The record on appeal includes the following medical records, among others:

A report by radiologist W. M. McCormack, M.D., dated August 12, 1975, notes "evidence of degenerative disc disease at C5-6 with narrowing of the joint space." An April 2, 1976, hospital discharge report by Dr. Karasik notes the July 1975 injury at work, complaints of pain and numbness in the left hand and arm, and a "final" diagnosis of "C5-C6 nerve root lesion."

A record from Lakeview Memorial Hospital, dated August 12, 1975, states that Dixon's left arm was numb, that this condition had started eight to 10 days ago, that she had pain from the neck into the left arm, and that examination indicated weakness of grip in the left hand.

Following an examination on November 26, 1975, Dr. Bipin Bavishi reported as follows: While at work on July 31, 1975, Dixon was lifting and doing other jobs. She developed numbness in the left thumb, index, middle, and ring fingers. She reported the incident to the nurse and the plant doctor. He treated her for seven days and referred her to Dr. Tanner. He had her neck X-rayed, then referred her to Carle Clinic. After tests, she was told that there was pressure on the nerve at the wrist. Presently, she had intermittent pain and numbness in the left thumb, index finger, middle finger, and ring finger. This also radiates to the forearm and elbow, and there is some neck discomfort.

A report of St. Francis Hospital, Evanston, dated June 1, 1976, states that Dixon was admitted complaining of pain and numbness of

the right arm and hand; that she previously underwent carpal tunnel release surgery on her left hand; and that she now felt the same symptoms in her right arm and hand.

A report by Dr. Robert C. Busch following an August 24, 1976, examination after surgery to both of Dixon's hands refers to the July 31, 1975, injury as part of the history. A diagnosis of "[c]ontusion and strain injury cervical area. Left cervical tendinitis [sic]. *** Herniated disc syndrome, cervical area. Carpal tunnel syndrome right and left hand" is noted. The report also notes: "Findings resulting from the injury." The latter remark is also included in a report following a May 5, 1977, examination; the latter report states essentially the same diagnosis and is signed by Dr. Busch and Dr. Hyman J. Hirshfield.

A letter dated December 5, 1975, from Dr. Robert D. Mussey to General Electric states that it was his "feeling that the complaints in her hand were psychosomatic and I did not advise surgery."

In a letter dated December 3, 1976, to counsel representing General Electric, Dr. James C. Nauman stated: "Carpal tunnel syndrome is more likely attributable to repetative [sic] activity with reference to the wrist and hand. It would be difficult to state that the carpal tunnel syndrome as apparently documented previously was specifically related to the injury she describes in July of 1975."

The seven previous decisions in this cause are as follows:

(1) The arbitrator's decision of June 20, 1977, finding that Dixon's disabling condition had not yet reached permanency, awarded benefits for temporary total disability and noted that proceedings for further benefits for temporary total disability or for permanent disability would be allowed. The arbitrator's decision made no reference to the nature of Dixon's injury, i.e., whether the wrists or cervical spine were involved.

(2) Dixon and General Electric both petitioned for review. The Commission, in addition to an award for a period of temporary total incapacity for work, found that Dixon had sustained a permanent loss of use of both arms to the extent of 25% of each. In this decision, dated July 31, 1978, the Commission did not specify the nature of Dixon's injury, i.e., whether the wrists or cervical spine were involved.

(3) General Electric petitioned the circuit court of Vermilion County for review of the July 31, 1978, decision of the Commission. In a decision dated April 6, 1979, the circuit court set aside the decision of the Commission and remanded for further proceedings. In so concluding, the circuit court found that "cervical nerve root syndrome" and carpal tunnel syndrome had been di-

agnosed. The court further found that no sudden trauma appeared to have caused the "disc injury"; however, that injury had not been present prior to July 31, 1975, and thus the events of that date could properly have been found to have caused that injury. As to the carpal tunnel syndrome, however, the court stated its inability to understand the basis for the Commission's implicit decision that the disability arising out of that condition was compensable. The court remanded for findings of fact as follows:

"If there was a determination of a connection between the carpal tunnel syndrome and the disc injury then the basis should be set forth. If it was based upon judicial knowledge, then the basis of that judicial knowledge should be set forth. If it was based upon judicial knowledge and there is no basis for that knowledge, then additional evidence on that issue may be heard. If the carpal tunnel syndrome is not related to the cervical disc problem and is based upon some other reason, then that reason should be set forth.

If the determination is made that there was no connection shown between industrial injury and the carpal tunnel syndrome, then the Commission should amend the award."

Neither party appealed from this decision.

(4) On remand, the Commission again found, in a decision dated May 30, 1980, that Dixon had sustained the permanent and complete loss of use of both arms to the extent of 25% of each. The prior award for temporary total disability was adjusted to correct a prior error as to the weekly rate thereof. The Commission also found that on July 31, 1975, Dixon was pushing and lifting objects weighing approximately 15 pounds on a repetitive basis and as a result sustained injury to both the cervical area and to the wrist area of each upper extremity; and that said trauma aggravated a preexisting arthritic condition and caused herniation of the intervertebral disc at "C5-C6" and a carpal tunnel syndrome in both wrists. As a basis for its findings, the Commission indicated that it relied upon: (a) Dixon's testimony as to the history of the July 31, 1975, accident; (b) the absence of any evidence of record of prior symptoms of the disabilities upon which the claim is based; (c) the findings of the treating doctor made soon after the accident; (d) the steady progression of Dixon's symptoms after the accident; (e) the findings and conclusions by examining doctors for both parties; (f) the lack of any clear opinion against causal connection with respect

to the claimed injuries by any doctors involved, although all were aware of the claimed work-related etiology; and (g) the Commission's expertise regarding this type of injury and the nature of the trauma described.

(5) General Electric petitioned for review, and the circuit court, in an order dated May 28, 1981, set aside the Commission's decision of May 30, 1980. The court found that the Commission's finding that Dixon's carpal tunnel syndrome was caused by the described accident was contrary to the manifest weight of the evidence; the award for permanent and complete loss of use of the right and left arm to the extent of 25% of each and for temporary total disability and medical expenses associated therewith was therefore set aside, and the cause was remanded for a determination as to what, if any, award should be made concerning the injury to the cervical area. The order also stated that because all matters had not been determined with finality, the court would not certify the cause for appeal to the supreme court pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

(6) In its decision on second remand, dated October 19, 1982, the Commission found Dixon to be entitled to compensation for a reduced period of temporary total disability and for a reduced amount of compensation for medical expenses. The Commission found Dixon to be permanently partially disabled to the extent of 12%. The Commission further stated:

"However the Commission would note its continuing disagreement with the order of Judge Lund stating that the Commission's finding of causal connection between Petitioner's carpal tunnel syndrome and resultant medical expenses, temporary total and permanent disability and her accident on July 31, 1975, was against the manifest weight of the evidence."

(7) Dixon and General Electric petitioned for review of the Commission's October 19, 1982, decision. The circuit court of Vermilion County confirmed that decision. Both parties appeal to this court.

General Electric urges that the Commission should have found that Dixon's wrist and cervical spine injuries did not arise out of and in the course of her employment. Dixon disagrees and contends in her cross-appeal that the May 30, 1980, decision of the Commission should have been confirmed.

■■■ The claimant has the burden of proof that his employment was a causative factor with respect to his physical disability. (*Steiner*

*v. Industrial Com.* (1984), 101 Ill. 2d 257, 261, 461 N.E.2d 1363, 1364.) The question of fact of causal relationship is peculiarly within the province of the Commission, and its decision will not be set aside unless it is contrary to the manifest weight of the evidence. (*Certi-Serve, Inc. v. Industrial Com.* (1984), 101 Ill. 2d 236, 244, 461 N.E.2d 954, 958.) It is for the Commission to draw reasonable inferences and conclusions from competent evidence, and this court will not discard permissible inferences drawn by the Commission merely because it might have drawn other inferences from the facts. *Caterpillar Tractor Co. v. Industrial Com.* (1984), 124 Ill. App. 3d 650, 653, 464 N.E.2d 1097, 1099.

■ We agree with the position advanced by petitioner, Dixon, in her cross-appeal, *i.e.*, that the May 30, 1980, decision of the Commission was not contrary to the manifest weight of the evidence. General Electric argues that the only proof of an "accident" was Dixon's testimony that she "was giving out" on Thursday, July 31, 1975, and dropping lighting units and that on the following Saturday she noticed pain and numbness. However, Dixon also testified that she felt pain on Friday. Furthermore, Dr. Bavishi's report describes the nature of the tasks Dixon was doing on the date in question, then states that Dixon developed numbness in the thumb and three fingers of her left hand. While none of this evidence taken alone is ideal proof of an accident, together it was sufficient to sustain Dixon's burden of proof on the issue of whether there was an "accident."

■■ General Electric also urges that the proof that Dixon's disability was caused by the claimed accident was insufficient. We disagree. General Electric fails to note any lay testimony or medical evidence contradicting the Commission's conclusion as to causation. While General Electric argues that Dr. Busch's opinion does not display the requisite degree of medical certainty, it is well established that a finding of causal relationship may be based on a medical expert's opinion that an accident "could have" or "might have" caused an injury. (*Mason & Dixon Lines, Inc. v. Industrial Com.* (1983), 99 Ill. 2d 174, 182, 457 N.E.2d 1222, 1226; *Caterpillar Tractor Co. v. Industrial Com.* (1984), 124 Ill. App. 3d 650, 654, 464 N.E.2d 1097, 1100.) General Electric also suggests that there was no proof of any incident traceable to a definite time or place, nor any "sudden" giving way of a body structure. However, there need be no external violence to the body to constitute an accidental injury, and compensation may be allowed where one's existing physical structure, whatever it may be, gives way under the stress of one's usual labor. *Laclede Steel Co. v. Industrial Com.* (1955), 6 Ill. 2d 296, 300, 128 N.E.2d 718, 720; *At-*

*lantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 141, 364 N.E.2d 83, 85.

General Electric urges numerous easily distinguishable cases for comparison. In *Caterpillar Tractor Co. v. Industrial Com.* (1983), 98 Ill. 2d 400, 456 N.E.2d 1366, unlike the instant case, the claimant had never stated that he had experienced a work-related injury, nor did he so report to his personal physician or treating specialist; and the medical reports of his physician and surgeon showed no opinion that his condition of ill-being was causally connected to any work-related activity. In *Johnson v. Industrial Com.* (1982), 89 Ill. 2d 438, 433 N.E.2d 649, none of the medical evidence nor any of the "numerous" medical reports in evidence expressed an opinion that the claimant's condition was, or could have been, caused as she had claimed. In *Caterpillar Tractor Co. v. Industrial Com.* (1980), 83 Ill. 2d 213, 414 N.E.2d 740, the claimant's testimony as to causation was contradicted by her prior inconsistent written statement and was not supported by medical evidence of any kind. In *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 305 N.E.2d 529, the expert medical testimony relied upon by the claimant indicated that the claimant would have had emphysema regardless of his employment, and there was evidence that he had suffered from emphysema prior to the claimed date of injury. In *Boland v. Industrial Com.* (1966), 34 Ill. 2d 422, 216 N.E.2d 152, the claimant continued to do the same work for several months after the accident claimed to have been the cause of shoulder bursitis and arthritic changes, and, although the other shoulder was not involved in the accident, it showed a similar disability.

In the instant case, none of the medical opinions as to causation are negative; there was no evidence that Dixon's condition predated the claimed accident; Dixon promptly sought medical assistance; medical reports reveal the claimed accident as part of her history; no inconsistent statements on her part are shown; Dixon has not worked since immediately after the claimed injury. Therefore, the decision of the Commission is not contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Vermilion County is reversed, and the decision of the Industrial Commission rendered in this cause on May 30, 1980, is reinstated.

Circuit court reversed; Industrial Commission confirmed.

BARRY, LINDBERG, McNAMARA, and WEBBER, JJ., concur.