ZION-BENTON TOWNSHIP HIGH SCHOOL DISTRICT 126, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Gilbert Andrade, Appellee).

Second District (Industrial Commission Division) No. 2—92—0369WC

Opinion filed March 2, 1993.

Arthur S. Bresnahan, of Bresnahan & Garvey, of Chicago, for appellant.

Salvatore J. Bongiorno, of Krol, Bongiorno & Given, Ltd., and Martin T. Spiegel, of Modesto, Reynolds & McDermott, both of Chicago, for appellees.

JUSTICE RARICK delivered the opinion of the court:

As is true for all workers' compensation cases, the ultimate issue here is whether the claimant, Gilbert Andrade, is entitled to compensation under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*). What is unique about this case is that employer, Zion-Benton Township High School District 126 (Zion-Benton), is represented by two different law firms from two different insurance carriers. Consequently, this case in reality involves an argument between the two carriers as to which one is liable for compensation payments to claimant after July 2, 1984. There is, in fact, no real question that claimant is not entitled to compensation from employer for his injuries.

Andrade, a high school graduate, began working for Zion-Benton as a maintenance man and in-house mail carrier in 1979. As a maintenance man, Andrade's duties included moving furniture, repairing machinery, unloading trucks and shoveling snow. On March 21, 1983, Andrade, then age 36, noticed a pain in his back while shoveling snow for Zion-Benton. He continued shoveling for two more hours until the pain became too great. He notified his supervisor of his condition and went home. Two days later Andrade saw his family physician, Dr. Chin Tsai, who initially prescribed bed rest and pain medication for Andrade's condition. On March 31, however, Andrade was admitted to the hospital complaining of severe low back pain radiating to both lower extremities. He also complained of neck pain and occipital headaches. At the hospital, he was treated by Dr. Tsai and Dr. Galo Tan who both diagnosed Andrade as suffering

from cervical and lumbosacral radiculopathy and post laminectomy syndrome. X rays of the cervical and lumbar spine exhibited some degenerative changes, while an EMG revealed nerve root irritation at L4-5 and L5. After an epidural nerve block was administered, Andrade was released on April 23, 1983. On April 25, however, Andrade was readmitted to the hospital for severe low back pain with radiation to the left leg. Although Andrade was released on May 7, he was readmitted June 29 to July 23 and August 5 to August 18 for the same problem. The diagnosis of acute L4-5 radiculopathy was made at each admission, and conservative care was provided throughout his stays. A second epidural nerve block was administered on July 7. While a cervical myelogram taken in July was normal, a lumbar myelogram indicated an L4-5 extradural defect on the left. On August 18, 1983, Andrade was admitted to a different hospital under the care of Dr. Ronald Pawl and later released on August 27, still under Dr. Pawl's care, to attend the Pain Treatment Center. Andrade remained at the Center as an inpatient until October 19, 1983, when he was released to return to work. At this point, Andrade returned to his regular duties at Zion-Benton but had the assistance of several other people for heavier jobs. Andrade continued to see Drs. Tsai and Tan for medications on a regular basis after returning to work. At some point in time, Andrade found himself unloading truckloads of boxes weighing up to 72 pounds and 55-gallon drums of maintenance supplies on a regular basis. Andrade's condition progressively worsened, and on July 2, 1984, Andrade left work because he "couldn't handle it anymore." He was immediately hospitalized until July 10 with a diagnosis of post laminectomy low back pain, spondylosis of the lumbosacral spine and mild hypertension. Conservative treatment again was provided. Andrade was hospitalized yet another time on August 12 for recurrent lumbar radiculopathy, herniated disc and spondylosis. A lumbar CT scan on August 13 exhibited a slight narrowing of the L4-5 left foramen due to left facet hypertrophy but revealed no herniation. A fusion at L5-S1 with a left iliac bone graft was performed on September 7, 1984. Andrade was eventually discharged on September 28. He was rehospitalized some 13 times between September 28, 1984, and his first hearing on his claims for compensation. Each time the diagnosis was recurrent lumbosacral radiculopathy. By September 1985, Andrade also had developed bilateral carpal tunnel syndrome and chronic pain syndrome. Carpal tunnel releases were performed in August and November 1986. Nerve blocks were also administered in November 1985 and 1986. By January 1987, Andrade was further

diagnosed with severe depression necessitating psychological counseling. While the doctors noted some improvement in Andrade's condition for varying periods over the years, they concluded his rehabilitative potential for return to work was minimal. Several of the doctors opined Andrade was totally and permanently disabled. Andrade has never been released from a doctor's care since July 2, 1984.

Andrade filed two applications for adjustment of claim pursuant to the Workers' Compensation Act. The first claim alleged injuries stemming from March 21, 1983. The second claim alleged an accident date of July 2, 1984. Both claims were consolidated for trial. With respect to the first claim, the arbitrator awarded Andrade 30$^{1/7}$ weeks of temporary total disability and found that Andrade was permanently and partially disabled to the extent of 10% of a man as a whole as the injuries sustained aggravated and worsened a preexisting back condition from the 1970s. With respect to the second claim, the arbitrator determined Andrade sustained a repetitive trauma injury, leaving him permanently and totally disabled for life, and was entitled to receive $89,092 in unpaid medical expenses. Andrade was ordered, however, to repay medical expenses and disability payments made by INA Insurance Company (INA) after July 2, 1984, because Zion-Benton had changed insurance carriers for the year 1984. Both Andrade and counsel for Zion-Benton with respect to the second claim (Bresnahan & Garvey) filed petitions for review with the Industrial Commission. The Commission affirmed the arbitrator's decision for both claims but eliminated the requirement that Andrade reimburse INA. Bresnahan & Garvey then appealed the Commission's decision claiming, in essence, that Andrade did not sustain an accidental injury of a repetitive nature on July 2, 1984. The circuit court of Lake County confirmed the Commission's decision in total. Bresnahan & Garvey now appeal to this court. Both Andrade and counsel for Zion-Benton with respect to the first claim (Modesto, Reynolds & McDermott) filed briefs in defense of the Commission's decision. In response, Bresnahan & Garvey filed a motion to strike the brief of Modesto. We initially granted the motion but later reinstated Modesto's brief. The motion has now been taken with the case.

Bresnahan & Garvey raise many issues on appeal with respect to the Commission's decision as affirmed by the circuit court pertaining to Andrade's second claim for benefits. No one disputes the fact Andrade was injured on March 21, 1983. The question is whether Andrade sustained an accidental injury of a repetitive

nature on July 2, 1984, or whether Andrade's condition of ill-being in reality stems from the March 1983 accident. The Commission determined a separate accident breaking the first chain of causal connection occurred on July 2, 1984. Bresnahan & Garvey assert on appeal that Andrade did not sustain an accidental injury of a repetitive nature on July 2, 1984. Bresnahan & Garvey also argue on appeal that Andrade failed to give Zion-Benton timely notice of the July 2, 1984, accident, that Andrade's second application for adjustment of claim is barred by the statute of limitations, and that Andrade is not permanently and totally disabled as a result of his employment on July 2, 1984.

We begin our analysis by noting it is the province of the Commission to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences, and to judge the credibility of the witnesses. (*E.g., Interlake, Inc. v. Industrial Comm'n* (1981), 86 Ill. 2d 168, 175, 427 N.E.2d 103, 107; *Service Adhesive Co. v. Industrial Comm'n* (1992), 226 Ill. App. 3d 356, 366, 589 N.E.2d 766, 772.) We cannot reject or disregard permissible inferences drawn by the Commission simply because different or conflicting inferences might also reasonably be drawn from the same facts, nor can we substitute our judgment for that of the Commission on such matters unless its findings are contrary to the manifest weight of the evidence. (*E.g., Health & Hospitals Governing Comm'n v. Industrial Comm'n* (1975), 62 Ill. 2d 28, 32, 338 N.E.2d 402, 404; *General Electric Co. v. Industrial Comm'n* (1984), 129 Ill. App. 3d 352, 359, 472 N.E.2d 486, 490.) Consequently, we cannot say the Commission's decision is against the manifest weight of the evidence in this instance.

 Gradual injury stemming from repeated trauma clearly is compensable under the Workers' Compensation Act as long as the employee proves the injury is work-related and not the result of normal degenerative processes. (See *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026; *Three "D" Discount Store v. Industrial Comm'n* (1989), 198 Ill. App. 3d 43, 556 N.E.2d 261.) He need not show any external violence to the body to prove an accidental injury, for compensation may be allowed whenever an employee's existing physical structure, whatever it may be, gives way under the stress of his usual labor. (*General Electric Co.*, 129 Ill. App. 3d at 359, 472 N.E.2d at 491.) The employee need only identify the date on which the injury manifested itself. (*Darling v. Industrial Comm'n* (1988), 176 Ill. App. 3d 186, 191, 530 N.E.2d 1135, 1139.) "Manifests itself" signifies the

date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person. (*Belwood Nursing Home*, 115 Ill. 2d at 531, 505 N.E.2d at 1029.) This does not mean, however, necessarily the date the employee became aware of the physical condition and its clear relationship to his employment. (See *Oscar Mayer & Co. v. Industrial Comm'n* (1988), 176 Ill. App. 3d 607, 610, 531 N.E.2d 174, 176.) A date based purely on discovery would penalize those employees who continue to work without significant medical complications when the eventual breakdown of the physical structure occurs beyond the statute of limitations period. (176 Ill. App. 3d at 611, 531 N.E.2d at 176.) Consequently, where the employee continues to work until the day his structure collapses or surgery is required, that can reasonably be considered by the Commission to be the date of accident in certain instances. (176 Ill. App. 3d at 611, 531 N.E.2d at 177.) Here, Andrade returned to work in October 1983 after his first accident and continued to carry out his responsibilities until July 2, 1984, when he no longer could handle the pain of repeated acts of heavy lifting involved in unloading truckloads of boxes weighing up to 72 pounds and 55-gallon drums of maintenance supplies. Although Andrade continued to see his doctors for medications during this period, he was able to perform his job. It was the repeated stress of unloading the trucks which eventually caused Andrade's condition to worsen to the point of the breakdown of his physical structure. A causal connection between an accident and a claimant's condition may be established by a chain of events including the employee's ability to perform manual duties prior to the date of an "accident" and a decreased ability to perform them immediately following that date. (See *Pulliam Masonry v. Industrial Comm'n* (1979), 77 Ill. 2d 469, 471, 397 N.E.2d 834, 835; *Darling*, 176 Ill. App. 3d at 193, 530 N.E.2d at 1140.) Moreover, a claimant need not negate every possible cause of injury or every unfavorable inference. (*Health & Hospitals Governing Comm'n*, 62 Ill. 2d at 33, 338 N.E.2d at 404-05; *Darling*, 176 Ill. App. 3d at 194, 530 N.E.2d at 1141.) Given such circumstances, the Commission's determination that a separate accident, breaking the first chain of causal connection, occurred on July 2, 1984, the last day Andrade was able to work, is not against the manifest weight of the evidence.

■ We also cannot say the Commission's determination that Zion-Benton received adequate and timely notice of Andrade's sec-

ond injury is against the manifest weight of the evidence. Section 6(c) of the Workers' Compensation Act states in part:

"Notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident.

* * *

No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect, or inaccuracy." (Ill. Rev. Stat. 1983, ch. 48, par. 138.6(c).)

Zion-Benton received notice of Andrade's condition of ill-being shortly after he left work on July 2, 1984. Within a matter of days, Andrade contacted his supervisor to inform him of his condition. His supervisor told him not to come back to work until he was "a hundred percent." Temporary disability payments were resumed effective July 2, 1984. While Andrade did not mention the possibility of a second "accident," an employer has the burden of proving undue prejudice from a defective or inaccurate notice. This Zion-Benton did not do. Zion-Benton had as much information as Andrade did at that point in time. (See *McLean Trucking Co. v. Industrial Comm'n* (1978), 72 Ill. 2d 350, 354-55, 381 N.E.2d 245, 247.) Additionally, because the date of Andrade's accident was determined correctly to be July 2, 1984, his filing of an application for adjustment of claim on June 26, 1987, was within the three-year limitations period for filing workers' compensation claims. We therefore find no merit to Bresnahan & Garvey's contentions with respect to the issues of notice or timeliness.

The final issue Bresnahan & Garvey urge on appeal pertains to the Commission's finding of total permanent disability. Bresnahan & Garvey argue Andrade did not meet his burden in proving he was unable to return to gainful employment as he presented no evidence of attempts to find work since July 2, 1984. The determination of the extent and permanency of an employee's medical disability is a question of fact for the Commission, and its determination will not be set aside unless it is against the manifest weight of the evidence. (*E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 361, 376 N.E.2d 206, 209; *Glover v. Industrial Comm'n* (1985), 140 Ill. App. 3d 361, 365-66, 485 N.E.2d 605, 608.) An employee does not have to be reduced to a state of total physical and mental incapacity before total permanent disability compensation can be awarded. Workers' compensation benefits are designed to compensate the em-

ployee for the impaired earning capacity resulting from his disability, not necessarily for the disability itself. (*E.R. Moore Co.*, 71 Ill. 2d at 360, 376 N.E.2d at 209.) A person is totally disabled under the Act when he cannot perform any services except those for which no reasonably stable labor market exists. (*Interlake*, 86 Ill. 2d at 176, 427 N.E.2d at 107; *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 487, 397 N.E.2d 804, 806.) Here, Andrade sustained a herniated disc and underwent numerous hospitalizations and medical treatments including spinal fusion, nerve blocks, carpal tunnel releases and eventually psychological counseling. He continues to suffer from intense low back pain, radiating pain down both legs, neck pain and headaches. All doctors who treated Andrade or reviewed his medical records opined there was little hope of his ever returning to any type of gainful employment. Zion-Benton introduced no medical evidence to the contrary. Once Andrade established he was not employable, the burden shifted to Zion-Benton to come forward with evidence to show not only that Andrade was capable of engaging in some type of regular and continuous employment but also that such employment was reasonably available. (*E.R. Moore Co.*, 71 Ill. 2d at 362, 376 N.E.2d at 210; *Chicago Rotoprint v. Industrial Comm'n* (1987), 157 Ill. App. 3d 996, 1003-04, 509 N.E.2d 1330, 1336.) Zion-Benton presented no such evidence. Clearly the Commission's decision with respect to Andrade's total permanent disability is not against the manifest weight of the evidence.

■ Finally, we deny Bresnahan & Garvey's motion taken with the case. Because INA was served with a notice of appeal and ultimately could have been affected by the outcome of Bresnahan & Garvey's appeal had we reversed the Commission's decision with respect to the issue of a second accident, its brief, as presented by Modesto, Reynolds & McDermott, is relevant to this appeal.

For the aforementioned reasons, the decision of the circuit court of Lake County confirming the decision of the Industrial Commission is affirmed in its entirety.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, STOUDER and RAKOWSKI, JJ., concur.