(No. 63065.—

PEORIA COUNTY BELWOOD NURSING HOME, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Wanda J. Cagle, Appellee).

*Opinion filed February 20, 1987.*

526

MORAN, J., concurring.

Heyl, Royster, Voelker & Allen, of Peoria (Rex K. Linder and Mark D. Henss, of counsel), for appellant.

John Lesaganich, of Goldfine & Bowles, P.C., of Peoria, for appellee.

Stevenson, Rusin & Friedman, Ltd, of Chicago (Douglas F. Stevenson, of counsel), for *amicus curiae* Illinois Manufacturers' Association.

Thomas D. Nyhan and Harry E. Kinzie III, of Chicago (Pope, Ballard, Shepard & Fowle, Ltd., of counsel), for *amici curiae* Illinois State Chamber of Commerce and Illinois Self-Insurer's Association.

Jay H. Janssen, of Peoria, for *amicus curiae* Illinois Trial Lawyers Association.

Jerome Schur and Richard K. Johnson, of Katz, Friedman, Schur & Eagle, of Chicago, for *amicus curiae* UAW-CAP Council.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The claimant, Wanda Cagle, filed a claim for compensation under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) (the Act) on August 24, 1979, alleging that she developed carpal tunnel syndrome as a result of her employment in the laundry room of her employer, Peoria County Belwood Nursing Home (Belwood). Both the arbitrator and, on review, the Industrial Commission found that the claimant had sustained an accidental injury as a result of repeated trauma to her wrist in her operation of two large washing machines in the laundry room of the nursing home. The circuit court of Peoria County confirmed the Commission's decision, and Belwood appealed to the appellate court. The appellate court affirmed the circuit court judgment and declared that the instant case involved a substantial question warranting consideration by this court. (138 Ill. App. 3d 880.) Belwood filed a petition for leave to appeal in this court pursuant to our Rule 315(a) (94 Ill. 2d R. 315(a)), and we granted its petition.

The issue raised in this appeal is whether an injury sustained as a result of work-related repetitive trauma is compensable under the Workers' Compensation Act without a finding that the injury occurred as a result of one specific incident traceable to a definite time, place and cause.

In the case at bar, the claimant worked for respondent for 12 years, the last six years in the laundry room.

The duties of her employment required her to carry bags of laundry weighing between 25 and 50 pounds. After sorting the laundry in these bags, she would load two 200-pound-capacity washing machines by operating a spring-loaded door into each of three compartments. Each day the claimant loaded the machines six times.

Although claimant initially alleged that her injury occurred on October 5, 1976, the arbitrator amended the claimant's application to reflect the date of injury as October 4, 1976, a date when claimant testified she experienced symptoms at work. On October 5, 1976, claimant consulted Dr. John McLean, a neurologist, regarding her symptoms of pain, numbness, and tingling. She continued to work until August 23, 1977, when she underwent outpatient surgery for carpal tunnel syndrome—"a complex of symptoms resulting from compression of the median nerve in the carpal tunnel with pain and burning or tingling parathesias in the fingers and hand, sometimes extending to the elbow." Dorland's Illustrated Medical Dictionary 1289 (26th ed. 1981).

The arbitrator awarded benefits for temporary total disability and for 25% permanent total disability. The Industrial Commission affirmed that award, and the circuit court confirmed the Commission's decision. The appellate court affirmed the circuit court judgment.

Before this court, Belwood raises two related issues. The first issue is whether the Industrial Commission's finding that the claimant sustained an "accidental injury" is contrary to the manifest weight of the evidence. Second, Belwood maintains that, since there is no specific "accident," the claim is barred by the three-year statute of limitations (Ill. Rev. Stat. 1985, ch. 48, par. 138.6(d)).

The more narrow issue presented in this appeal is what is meant by the term "accidental injury" within the meaning of the Act.

In the instant case, the claimant was found to have presented sufficient medical evidence to establish that her injury was work related. We do not believe that finding is against the manifest weight of the evidence. However, whether the claimant's injury is "accidental" is the crux of this case. We believe that the purpose behind the Workers' Compensation Act is best served by allowing compensation in a case like the instant one where an injury has been shown to be caused by the performance of the claimant's job and has developed gradually over a period of time, without requiring complete dysfunction. In order to achieve this result we believe the case of *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, and that line of cases following *International Harvester*, should be interpreted so as to include a case like the instant one. We do not believe that in so doing we are partaking in judicial legislation; rather we are engaging in necessary and proper judicial statutory interpretation so as to implement the purpose of the Workers' Compensation Act.

The Workers' Compensation Act was intended to provide financial protection for injured workers regardless of a showing of negligence or contributory negligence, while precluding the employee from common law tort remedies. (*Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556, 563.) To that end, it has been consistently held that the Act should be liberally construed to accomplish its purpose and objects. 62 Ill. 2d 556, 563.

Requiring complete collapse in a case like the instant one would not be beneficial to the employee or the employer because it might force employees needing the protection of the Act to push their bodies to a precise moment of collapse. Simply because an employee's work-related injury is gradual, rather than sudden and completely disabling, should not preclude protection and benefits. The Act was intended to compensate workers

who have been injured as a result of their employment. To deny an employee benefits for a work-related injury that is not the result of a sudden mishap or completely disabling penalizes an employee who faithfully performs job duties despite bodily discomfort and damage.

As the appellate court correctly stated, an employee who alleges injury based on repetitive trauma must still meet the same standard of proof as other claimants alleging an accidental injury. There must be a showing that the injury is work related and not the result of a normal degenerative aging process.

The claimant in the instant case testified that she experienced pain and tingling in her left arm while working her regular shift on October 4, 1976. She informed Dr. McLean on October 5, 1976, that she had extreme difficulty gripping the washer doors on October 4, due to the pain she was experiencing. The medical testimony the claimant presented was uncontroverted. Therefore, we now hold that the Industrial Commission's finding that the claimant suffered an accidental injury under the Act is not against the manifest weight of the evidence.

We now address the second issue raised by respondent, regarding the three-year statute of limitations: whether the claimant is barred from bringing her claim since her injury is not allegedly traceable to a specific date of accident.

Section 6(d) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.6(d)) provides in pertinent part that a claimant must file a claim for compensation within three years after the date of the accident.

The appellate court analyzed the various possibilities for determining the date of an accident in cases like the instant one where an employee suffers a work-related injury due to repetitive trauma. The appellate court held that a rule propounded by Professor Larson in his treatise on workers' compensation would be most logical,

and we agree. (1B A. Larson, Workmen's Compensation sec. 39.50 (1985).) We therefore hold that the date of an accidental injury in a repetitive-trauma compensation case is the date on which the injury "manifests itself." "Manifests itself" means the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person.

The claimant in the instant case worked on October 4, 1976, and experienced the symptoms of her injury. On October 5, 1976, she sought medical treatment and was told that her injury was caused by her job-related activities. Therefore, the October 4, 1976, date was the last day the claimant worked before the fact of her injury and its causal connection to her employment became apparent to her. Claimant filed her claim on August 24, 1979, within three years of the date of her injury.

Accordingly, we now affirm the judgment of the appellate court, which affirmed the circuit court's confirmation of the Industrial Commission's and arbitrator's award of benefits to the claimant.

*Judgment affirmed.*

JUSTICE MORAN, concurring:

While I join the opinion and judgment of the court, I write separately to focus attention on proof of causality where, as here, the alleged compensable injury is a consequence of repetitive trauma.

This court stated in *Johnson v. Industrial Com.* (1982), 89 Ill. 2d 438, that repetitive-trauma injuries are compensable under the Workers' Compensation Act where there is sufficient evidence of causation in the record. The *Johnson* court was unable to conclude, on the record before it, that the alleged repetitive-trauma injury was work related because "[i]n none of the numerous medical reports in evidence was an opinion expressed

that her condition was caused, or could have been caused, by her steering of the carts." (89 Ill. 2d 438, 443.) Thus, in *Johnson*, the claimant was unable to recover under the Act because she failed to establish a causal connection between her "daily work of loading and maneuvering the [food] cart" and the development of bilateral carpal tunnel syndrome.

In the instant case, as in *Johnson*, we have the same repetitive-trauma injury—bilateral carpal tunnel syndrome. Also, as in *Johnson*, we are faced with determining whether or not the record contains evidence to establish that the repetitive nature of claimant's employment caused her injury. While the majority finds the requisite causal connection, it does so tersely and without elaboration by stating that "[t]he medical testimony the claimant presented was uncontroverted." (115 Ill. 2d at 530.) On my reading of the record, this is true. However, standing alone it gives little guidance as to what evidence is sufficient to establish causality in repetitive-trauma, workers' compensation cases.

I believe that the record in this case, unlike the record in *Johnson*, contains facts sufficient to affirm the finding of the arbitrator that the claimant's carpal tunnel syndrome was a work-related, repetitive-trauma injury. For example, the claimant testified that she operated two commercial laundry machines. She stated that each machine contains three separate washing compartments, each equipped with a spring-hinged door. The claimant further testified that she usually completed six loads of laundry per machine, with each load requiring that she open and close the door of the three compartments. She testified that opening the spring-hinged doors required that she "pull down and pull out" on the door handle. According to claimant's testimony, on a typical work day, she opened the doors using the "pull down and pull out" maneuver 36 times. She also closed the

doors 36 times. Claimant's testimony on this point was uncontradicted.

The record in the instant case also contains at least three separate diagnoses of carpal tunnel syndrome. In addition, the claimant submitted a report by Horacio R. Rivero, M.D., her medical expert, who expressly concluded that claimant's injury was a result of the "repetitive continuous motion and strain impossed [*sic*] to the element of the carpal tunnel, while in the process of her employment (handling large laundry machines), whereby she developed typical symptoms of bilateral carpal tunnel, being worse on the left side, requiring immediate surgery, and having the right one aggravated by continued work in this same job, further necessitating equal surgery." Dr. Rivero's report was unrebutted.

These facts clearly distinguish the present case from *Johnson*. The claimant's specific and unrefuted testimony of the repetitive movements involved in her employment, together with Dr. Rivero's unrefuted conclusion that claimant's employment caused her injury, amply supports the arbitrator's finding of causality and the majority's affirmance thereof. Because the claimant did establish the requisite causal connection to sustain a claim under the Act, I concur.