OSCAR MAYER & COMPANY, Appellee, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Robert J. Caputo, Appellant).

Fourth District (Industrial Commission Division)   No. 4—87—0737WC

Opinion filed December 1, 1988.

Ronald J. Kanoski, of Kanoski & Maritote, of Rushville, for appellant.

Rammelkamp, Bradney, Dahman, Kuster, Keaton & Fritsche, of Jacksonville (Forrest G. Keaton, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant appeals from an order of the circuit court reversing the Industrial Commission (Commission) decision which affirmed an arbitrator's award of benefits to claimant for carpal tunnel syndrome. The trial court concluded claimant failed to establish a date of accident as required by the supreme court decision in *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026. Claimant appeals and we reverse.

The facts are undisputed. Claimant began his employment at respondent's hog slaughtering facility in 1968. He worked in various capacities for the following 15 years. Each of his duties required repeated arm, shoulder, and hand movements. For the last six years of his employment, claimant worked on the "cut floor" performing a job called the "shoulder chop." This required positioning and cutting hog carcasses, each weighing from 90 to 200 pounds, at the rate of approximately 800 per hour during each 8- to 10-hour shift. In 1981, claimant began experiencing numbness, tingling, and burning sensations in his elbows and hands.

Claimant was examined at that time by the company doctor and, based on electrical diagnostic testing, was informed he suffered from bilateral carpal tunnel syndrome. Claimant testified he refused surgery because of his age. Claimant was treated with conservative methods and pain killers for the next two years although his condition did not improve.

In August 1982, a second nerve conduction test indicated claimant's condition was becoming progressively worse. Claimant still resisted surgery because of his age. Conservative treatment including cortisone shots and doses of vitamin $B_6$ were administered.

A third nerve conduction test performed on May 6, 1983, again confirmed claimant's deteriorating condition, and he finally consented to surgery, which was performed on his right hand on May 12, 1983, and on his left hand on August 3, 1983. He returned to work in October 1983, retiring in December 1983 at the age of 61.

Claimant's application for adjustment of claim was filed April 5,

1984. It alleged the date of the industrial accident was May 12, 1983. At the arbitration hearing, claimant was granted leave to amend the date of accident to May 11, 1983, on the theory this was the last day claimant was exposed to repetitive trauma. As we have indicated, the arbitrator and Commission awarded benefits under section 8(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(e)) for the permanent and complete loss of the use of 15% of each hand. The circuit court, however, reversed, finding claimant failed to prove May 11, 1983, was the date of the accident.

On appeal, claimant candidly admits if this court applies the test announced by the supreme court in *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026, in its narrowest sense, the date of injury alleged by claimant in the instant case is excluded and his claim for benefits fails. Claimant acknowledges he was treated by the company doctor in June 1981, when he was informed of the existence of bilateral carpal tunnel syndrome. He further concedes May 11, 1983, was simply the date he quit working prior to a scheduled surgery to correct the condition.

■ In *Peoria Belwood*, the supreme court considered the question of whether carpal tunnel syndrome sustained as a result of work-related repetitive trauma was compensable without a finding the injury occurred as a result of one specific incident traceable to a definite time, place, and cause. The supreme court answered that question in the affirmative qualified by the following:

> "We therefore hold that the date of an accidental injury in a repetitive-trauma compensation case is the date on which the injury 'manifests itself.' 'Manifests itself' means the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." (*Peoria Belwood*, 115 Ill. 2d at 531, 505 N.E.2d at 1029.)

Claimant acknowledges it is clear from the record he knew of his injuries and their relationship to his employment prior to May 11, 1983. Claimant argues, however, the date of "collapse" should still be considered a viable date for determining injury in repetitive trauma cases, citing *International Harvester Co. v. Industrial Comm'n* (1973), 56 Ill. 2d 84, 305 N.E.2d 529. There it was stated the appropriate date of injury is the date "where the employee's existing physical structure *** gives way under the stress of his usual labor and he is suddenly disabled." *International Harvester*, 56 Ill. 2d at 90, 305 N.E.2d at 533.

Claimant argues Illinois adheres to the repeated-impact theory under which each impact is regarded as an accidental occurrence. (1B A. Larson, Workmen's Compensation Law §39.40 (1985).) Claimant reasons that as long as the supreme court continues to require the "fiction" of establishing a definite date of injury, claimant ought to be entitled to a broad interpretation of the rule which would allow him to select any date upon which he is exposed to the work-related trauma, including the last date of exposure. Applying *Peoria Belwood* narrowly would, according to claimant, reduce the parties to the "tortious tedium" of trying to determine when a reasonable man *first* would have determined the one correct date on which the fact of the injury and its causal connection to the workplace became apparent.

Respondent counters the supreme court has always adhered to the necessity of establishing a specific date of accident. Respondent points out the date of accident is not without meaning since a number of important questions cannot be answered unless a date of accident or injury is fixed. As noted by Professor Larson, these include which employer and carrier is at risk, whether notice of injury and claim are within the statutory period, whether statutory amendments were in effect, which wage basis applies, and many others. 1B A. Larson, Workmen's Compensation Law §39.10 (1985).

■ In this court's decision in *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1985), 138 Ill. App. 3d 880, 487 N.E.2d 356, the court recognized two alternative criteria are set forth by Professor Larson for fixing the date when the injury manifests itself. The first is the time at which the employee can no longer perform his job. The other, the onset of pain which necessitates medical attention. In adopting the former of these, this court concluded the time at which both the fact of the injury and the causal relationship become plainly evident is a question of fact and the "onset of pain and the inability to perform one's job, are among the facts which may be introduced to establish the date of injury." *Peoria Belwood,* 138 Ill. App. 3d at 887, 487 N.E.2d at 361.

■ We conclude nothing in this court's decisions or the supreme court opinion in *Peoria Belwood* constrains us to adopt the narrow interpretation of that opinion urged by respondent and applied by the trial court. To always require an employee suffering from a repetitive-trauma injury to fix, as the date of accident, the date the employee became aware of the physical condition, presumably through medical consultation, and its clear relationship to the employment is unrealistic and unwarranted.

By their very nature, repetitive-trauma injuries may take years to develop to a point of severity precluding the employee from performing in the workplace. An employee who discovers the onset of symptoms and their relationship to the employment, but continues to work faithfully for a number of years without significant medical complications or lost working time, may well be prejudiced if the actual breakdown of the physical structure occurs beyond the period of limitation set by statute. (See Ill. Rev. Stat. 1987, ch. 48, par. 138.6(d).) Similarly, an employee is also clearly prejudiced in the giving of notice to the employer (see Ill. Rev. Stat. 1987, ch. 48, par. 138.6(c)) if he is required to inform the employer within 45 days of a definite diagnosis of the repetitive-traumatic condition and its connection to his job since it cannot be presumed the initial condition will necessarily degenerate to a point at which it impairs the employee's ability to perform the duties to which he is assigned. Requiring notice of only a *potential* disability is a useless act since it is not until the employee actually becomes disabled that the employer is adversely affected in the absence of notice of the accident. A final example can be drawn from the amount of benefits to which a disabled worker is entitled. Clearly, benefits are tied to the wage rate being earned on the date of accident. (Ill. Rev. Stat. 1987, ch. 48, par. 138.10.) An employee who has worked without interruption for a number of years receiving regular increases in wages is precluded from benefits based on wages earned at the time of disablement if the date of accident is the date the condition was discovered rather than the date the employee can no longer perform the work.

■ We are not unmindful the date of accident is a significant one for fixing the legal relationships between the parties. As we have indicated, however, this is a question of fact for the Commission to determine. The date of disablement, be it for reason of medical treatments such as surgery, or actual collapse of the physical structure, is but one aspect of the proof the parties may bring to bear on the issue of manifestation of the injury. Where, as here, the relationship of the injury to the employment is acknowledged by respondent, as well as the fact claimant continued to perform his duties until the day prior to the surgery required to correct the condition, the Commission could reasonably determine the last day claimant worked was the date of accident. In short, we hold the term "fact of the injury" as used by the supreme court in *Peoria Belwood* (115 Ill. 2d at 531, 505 N.E.2d at 1029) is not synonymous with "fact of discovery."

We reiterate we are dealing with a repetitive-trauma injury.

Nothing we say here should be interpreted as establishing an inflexible rule. Just as we reject respondent's contention the date of discovery of the condition and its relation to the employment necessarily fixes the date of accident, we reject any interpretation of this opinion which would permit the employee to always establish the date of accident in a repetitive-trauma case by reference to the last date of work.

Illustrative is our decision in *Nunn v. Industrial Comm'n* (1987), 157 Ill. App. 3d 470, 510 N.E.2d 502. In that case, claimant maintained the last day she worked was the date of accident based on events occurring on that date which, she claimed, exacerbated a seven-month period of gradually worsening pain. In *Nunn*, the employer presented counterevidence suggesting the injury was not causally related to the employment at all but, instead, could be traced to conditions unassociated with the employment tasks which claimant was required to perform which, it was also contended, could not have produced the injury. In addition, there was evidence claimant offered an alternative cause of injury to medical personnel. In that case, as here, the issue of date of accident, as well as causal relationship, were issues of fact based on the credibility of the witnesses.

Here there is no dispute as to the causal relationship of the injury to the workplace, and there is no evidence of disablement, in terms of inability to work, until claimant quit working on May 11, 1983. Based on the facts of this case, the Commission was entitled to determine the date the accident manifested itself in this repetitive-trauma case on the date claimant last worked for respondent prior to surgery to correct the condition for which compensation was sought. Accordingly, the judgment of the circuit court of Schuyler County is reversed and the decision of the Industrial Commission is reinstated.

Circuit court reversed; Commission decision reinstated.

BARRY, P.J., and McNAMARA, WOODWARD, and LEWIS, JJ., concur.