CONSUELO CASTANEDA, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Harper-Wyman Company, Appellee).

Third District (Industrial Commission Division)   No. 3—91—0544WC

Opinion filed July 13, 1992.

Kurt A. Neirmann, of Presbrey & Amoni, of Aurora, for appellant.

Jeremy H. Heiple, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for
appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The claimant, Consuelo Castaneda, was employed by Harper-Wyman Company (the employer) for about 10 years until she was laid off on June 19, 1987. Subsequently, on September 26, 1988, claimant brought a claim pursuant to section 19(b) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*), and after a hearing, the arbitrator found in claimant's favor. The arbitrator found that claimant suffered an accident arising out of her employment on June 19, 1987, and that she was entitled to temporary total disability benefits, medical expenses and penalties due to the employer's delay in payment of benefits. The Industrial Commission (Commission) reversed the decision of the arbitrator, finding that claimant's injury had manifested itself on April 26, 1985, and thus the claim, filed on September 26, 1988, was outside the three-year statute of limitations set forth in section 6 of the Act. The circuit court confirmed the Commission's decision, and plaintiff has appealed. We affirm.

The record reveals that claimant, 57 years of age, worked for the employer as an assembler, an occupation which required her to work a "lugger" machine. This required her to place parts in the lugger machine and press them down. She then would push buttons, unload the cases, and reload the machine. Finished boxes were removed from the machine, folded, taped and placed on a rack. During the course of an eight-hour day, claimant put out approximately 540 pieces. Prior to working as an assembler, which she did for about a year and one-half before leaving the employer, claimant for five or six years worked at a wiring and soldering position. This position required claimant to twist wires on individual pieces with pliers, place the pieces into a lock and solder them.

Claimant first noticed problems with her hands at the time she was performing wiring and soldering in April of 1985. At this time, she complained of swelling in her wrist and hands, and had difficulty lifting things. On April 26 and May 1, 1985, claimant made two visits to Dr. Subbiah, to whom she was referred by Dr. Interone. Dr. Subbiah ordered tests, and claimant missed some work, but then returned to work.

When claimant saw Dr. Subbiah in April of 1985, her complaints were for numbness and tingling in the hands, with the problem more acute in her right hand. Dr. Subbiah's notes reflect "[claimant] is relating her symptoms to work." A neurological examination revealed evidence of a positive Tinel sign bilaterally, which relates

to nerve irritation. A nerve conduction study and EMG were done on April 30, 1985, and on May 1, 1985, Dr. Subbiah diagnosed claimant's problem as "most likely *** a nonspecific arthritic syndrome *** and no evidence of neurologic disease [and] no evidence of entrapment neropathy."

When claimant returned to work, she continued to have complaints that her hands and wrists were sore and swollen. These complaints persisted up until her last day of work in 1987. After her employment with the employer, she tried to work as a maid, but was unable to do so due to her hands. In August of 1988, claimant's hands were hurting excessively, so she went for treatment to Dr. Vinje, who then referred her to Dr. Delacruz. On September 8, 1988, Dr. Delacruz issued a neurological report which indicated his impression of right carpal tunnel syndrome.

Claimant went to Dr. Barnes for a second opinion. Barnes first saw claimant on October 13, 1988. Upon this initial examination, Barnes made a preliminary diagnosis of carpal tunnel syndrome bilaterally. Ultimately, surgery was performed upon both of claimant's hands in June of 1989.

Claimant has been restricted from work by Dr. Barnes since October 13, 1988. The last time she saw Barnes was September 20, 1989. Barnes testified that based on claimant's history, her condition was causally related to her employment. He stated that she had bilateral carpal tunnel syndrome in April of 1985, but that there was no way of knowing when it first occurred.

Two witnesses from the employer's personnel department testified that although they were aware of claimant's hand complaints in 1985, they had no specific knowledge of any June 19, 1987, accident or hand problems claimant experienced at that time until claimant's workers' compensation case was underway. Richard Ryba, the employer's personnel manager, said that claimant did not notify him of any June 1987 complaints concerning her hands, although he was aware that she had experienced problems with her hands in 1985 or 1986. Marlene Tegmeyer, the employer's director of personnel, said that she had no notice of claimant's hand problems in June of 1987 until she received the application for adjustment of claim. Tegmeyer related, however, that the employer had paid medical bills for claimant in 1985, relating to problems with claimant's wrist.

We first address the issue of whether the Commission's finding that April 26, 1985, was the day of claimant's injury is against the manifest weight of the evidence.

■■ ■ Simply because claimant's injury was not sudden does not deprive claimant of the Act's coverage. As the Illinois Supreme Court stated in *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 529-30, 505 N.E.2d 1026, a case in which the claimant, as here, suffered from carpal tunnel syndrome:

> "Requiring complete collapse in a case like the instant one would not be beneficial to the employee or the employer because it might force employees needing the protection of the Act to push their bodies to a precise moment of collapse. Simply because an employee's work-related injury is gradual, rather than sudden and completely disabling, should not preclude protection and benefits. The Act was intended to compensate workers who have been injured as a result of their employment. To deny an employee benefits for a work-related injury that is not the result of a sudden mishap or completely disabling penalizes an employee who faithfully performs job duties despite bodily discomfort and damage."

In the case of *Three "D" Discount Store v. Industrial Comm'n* (1989), 198 Ill. App. 3d 43, 47, 556 N.E.2d 261, the court observed:

> "An employee seeking benefits for gradual injury due to repetitive trauma must meet the same standard of proof as a petitioner alleging a single, definable accident. [Citation.] The petitioner must prove a precise, identifiable date when the accidental injury manifested itself. 'Manifested itself' means the date on which both the fact of the injury and the causal relationship of the injury to the petitioner's employment would have become plainly apparent to a reasonable person. [Citation.] The test of when an injury manifests itself is an objective one, determined from the facts and circumstances of each case. [Citation.] A reviewing court may overturn the Commission's factual determinations only when they are against the manifest weight of the evidence. [Citation.]"

■ Applying the foregoing to the facts of the case *sub judice*, we conclude that the Commission's finding that the date of injury was April 26, 1985, is not against the manifest weight of the evidence. Claimant argues that the true date of injury was June 19, 1987, her last day of employment. In making this argument, claimant emphasizes that the types of jobs claimant performed for the employer were the types of jobs to which repetitive trauma injury would be a common result, and that claimant continued to have complaints after she stopped working for the employer.

Claimant relies heavily upon the case of *Oscar Mayer & Co. v. Industrial Comm'n* (1988), 176 Ill. App. 3d 607, 531 N.E.2d 174. There, in another carpal tunnel syndrome case, the court reinstated an Industrial Commission factual finding that the date the claimant's injury manifested itself was the claimant's last day of work. Interestingly, although the claimant in *Oscar Mayer* clearly knew of his injury well prior to his last date of employment, having been examined and diagnosed by the employer's physician, the opinion does not relate any affirmative statement or knowledge on the part of the claimant that the injury was caused by his employment. The court held that the Commission's finding that the claimant's date of injury was his last day of work (and the day before he underwent surgery for his condition) was not against the manifest weight of the evidence. The court also observed:

"Nothing we say here should be interpreted as establishing an inflexible rule. Just as we reject respondent's contention the date of discovery of the condition and its relation to the employment necessarily fixes the date of accident, we reject any interpretation of this opinion which would permit the employee to always establish the date of accident in a repetitive-trauma case by reference to the last date of work." 176 Ill. App. 3d at 612.

In *Peoria County Bellwood*, the supreme court held: "The claimant *** worked on October 4, 1976, and experienced the symptoms of her injury. On October 5, 1976, she sought medical treatment and was told that her injury was caused by her job-related activities. Therefore, the October 4, 1976, date was the last day the claimant worked before the fact of her injury and its causal connection to her employment became apparent to her." (*Peoria County Bellwood*, 115 Ill. 2d at 531.) The supreme court reached this conclusion despite the fact that the claimant continued to work for over 10 months after October 1976. (115 Ill. 2d at 528.) In *Three "D,"* this court found that claimant's injury manifested itself *before* claimant's last day of work, which was the date upon which the Commission had fixed claimant's accidental injury. (*Three "D"*, 198 Ill. App. 3d at 48.) It is thus clear that a claimant's last day of exposure to repetitive trauma is not, in and of itself, the day of accident for the purposes of repetitive injury cases.

We note, moreover, that all of the cases discussed above showed deference to the Commission's determination of the issue. In *Peoria County Bellwood*, the Commission's determination was affirmed by both the supreme and appellate courts. In *Oscar Mayer*, the court reversed the circuit court's order which had set aside the Commis-

sion's finding. In *Three "D,"* while the court found that claimant's injury manifested itself one month earlier than the Commission had, it nonetheless affirmed the Commission's award of benefits to the claimant. Here, the claimant asks us to reverse the Commission's date of injury finding.

We apply the law to the instant case with the proper standard of review in mind, namely, that we may not reverse the Commission's factual finding that April 26, 1985, was the date the injury manifested itself unless it was against the manifest weight of the evidence. Claimant has related no significance to the last day of work, June 19, 1987, other than its being the last day she worked for the employer. The record reveals that she was "laid off," as the employer discontinued her position and she could not perform other positions. Claimant did not seek any medical treatment at the time she stopped working. At that time, she was offered a transfer to another position with the employer, but declined, apparently because she was unable to perform the work because of her hand condition. Yet, she did not seek any further medical treatment until well over a year after she no longer worked for the employer.

To the contrary, the record does support the Commission's determination that April 26, 1985, is the date upon which the accidental injury manifested itself. The purpose of her visit to Dr. Subbiah, to whom she was referred, was her complaints of numbness and tingling in her hands. At this point in time, petitioner herself, according to Dr. Subbiah's notes, related her hand problems to her employment. Dr. Subbiah found evidence of a positive Tinel sign bilaterally, which according to Dr. Barnes, along with her symptoms, presented "classic" carpal tunnel syndrome at the time. Claimant points out that Dr. Subbiah's notes also reflect a diagnosis of an arthritic condition at this time, and claimant contends that this supports the conclusion that because of this diagnosis, she was not aware that her injury was work-related. However, claimant points to no testimony or evidence to suggest that she was informed at the time that her injury was not work-related, and, if so, that she changed her mind that her condition was work-related due to her being so informed. Thus, we do not ascribe force to claimant's contention that although she initially was aware of the relation of her work to her injury, she somehow became unaware of same. For the foregoing reasons, we find that claimant's contention that June 19, 1987, was the date of accident is not a conclusion clearly apparent. Accordingly, the Commission's determination of

the date of accidental injury in the case *sub judice* is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, STOUDER and H. LEWIS, JJ., concur.