AC & S, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Nick Delessio, Appellant).

First District (Industrial Commission Division) No. 1—98—0700WC

Opinion filed March 9, 1999.—Rehearing denied May 26, 1999.

Goldberg, Weisman & Cairo, Ltd., of Chicago (Charles R. Culbertson, of counsel), for appellant.

Kilgallon & Carlson, of Chicago (Bradley C. Knell, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

This is an appeal by Nick Delessio, claimant, from a decision of the circuit court of Cook County that reversed the March 4, 1997, decision of the Industrial Commission (Commission). The arbitrator, on March 6, 1995, found that claimant's date of accident fell outside the time period claimant was employed by respondent AC & S (AC & S). The Commission reversed the arbitrator and granted the claimant $9^3/7$ weeks of temporary total disability (TTD) and compensation under section 8(e) of the Workers' Compensation Act (820 ILCS 305/8(e) (West 1992)) (Act) for $47^1/2$ weeks, representing 10% loss of use of the right hand and 15% loss of use of the left hand and medical expenses.

On February 5, 1998, the circuit court reversed the Commission, concluding, as a matter of law, that the manifestation date must occur during employment. We reverse the circuit court and affirm the Commission.

Claimant started working for AC & S on February 24, 1993. He performed similar work, installing heat and frost insulation, for almost 22 years prior to his work there. Immediately before working for AC & S, claimant had worked as an insulation installer for Universal Insulation and MVP Insulation, though this was lighter work, on a smaller scale. He testified the AC & S job was atypical because it involved moving heavier materials than usual, and it required him to wear a fire suit and full body harness, which weighed 10 to 15 pounds. While claimant normally worked 40 hours per week, this job required him to work six to seven days a week for 10 hours per day. James Kerns, a coworker, verified that this was a special "heavy industrial" job involving special equipment and longer hours, up to 12 hours per day for six or seven days a week.

According to claimant, he began experiencing numbness, tingling and aching in both hands in the spring of 1993. He testified he had no such symptoms before he started working for AC & S. He did not tell anyone in management about his problems with his hands, and he received no medical treatment during his tenure at AC & S. According to Jeff Heubrich, AC & S' safety manager, claimant never filed an

injury report, and he never missed work. Jerry Stolarz, the project manager for AC & S, testified he was never informed of any injury or work restrictions involving claimant and did not recall claimant missing any work.

Claimant was laid off on June 10, 1993. Stolarz testified the layoff was not for medical reasons, and several other people were also laid off. Claimant immediately found a full-time job with Commercial Insulators (Commercial). He testified he was doing similar work, but on a smaller scale.

On June 17, 1993, claimant was seen by Dr. James Schlenker, a hand surgeon, about pains in his hand. Claimant testified this appointment was made in April 1993. Schlenker testified that it typically takes two to four weeks to get an appointment with him. On June 22, 1993, Schlenker told claimant he suffered from carpal tunnel syndrome.

According to Schlenker's deposition, claimant was predisposed to having carpal tunnel syndrome before working at AC & S. Schlenker testified claimant had a preexisting condition due to his long history of repetitive work, and this condition became symptomatic when it was aggravated by his work for AC & S. According to Schlenker's report, claimant told him he had had hand symptoms for six months. This period would have started two months before claimant started working for AC & S. Claimant testified he did not recall this statement, and if he made it, it was incorrect. Schlenker testified it was possible claimant suffered from symptoms of carpal tunnel syndrome before his employment with AC & S. However, Schlenker testified claimant told him his symptoms began about a month after he started working for AC & S, and Schlenker believed this to be true.

Claimant testified he notified AC & S of his condition on June 22, 1993. Specifically, he gave Schlenker's secretary the phone number of AC & S, and he was present when she called the AC & S office. Heubrich testified his first notice of an injury was from a phone call after claimant was laid off. Claimant continued to work for Commercial until he had carpal tunnel surgery on his left hand on September 11, 1993. Claimant contends he was temporarily totally disabled until he was released for work on November 15, 1993.

On March 4, 1997, the Commission found claimant sustained an accidental injury arising out of his employment on June 22, 1993. The Commission concluded the injury would have become plainly apparent to a reasonable person on this date. It concluded the date the injury became manifest need not be within the period of employment, and there was a causal connection between his activities at AC & S and the fact claimant's carpal tunnel syndrome became symptomatic. The

Commission found timely notice and awarded claimant permanent partial disability (PPD) benefits, medical expenses, TTD benefits, and interest. On February 5, 1998, the circuit court reversed the Commission, holding the manifestation date must be during the period of employment for an employee to recover under the Act.

■ An employee who suffers a gradual injury due to repetitive trauma is eligible for benefits under the Act, but he must meet the same standard of proof as a petitioner alleging a single, definable accident. *Three "D" Discount Store v. Industrial Comm'n*, 198 Ill. App. 3d 43, 47, 556 N.E.2d 261, 264 (1989). Proof that the relationship of employer and employee existed at the time of the accident is one of the elements of an award under the Act. *Beletz v. Industrial Comm'n*, 42 Ill. 2d 188, 192, 246 N.E.2d 262, 265 (1969). The date of the accidental injury in a repetitive-trauma case is the date on which the injury "manifests itself." *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 531, 505 N.E.2d 1026, 1029 (1987).

The Commission set the manifestation date at June 22, 1993, the date Schlenker told claimant of his diagnosis. The manifestation date is the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person. *Belwood*, 115 Ill. 2d at 531, 505 N.E.2d at 1029.

■ The principal issue before us is whether the trial court correctly held, as a matter of law, that the manifestation date must occur during employment. Because this is an issue of law, we review the trial court's decision *de novo*. See *Bommarito v. Industrial Comm'n*, 82 Ill. 2d 191, 194, 412 N.E.2d 548, 549 (1980). The injury must arise "out of" and "in the course of" employment to be compensable under the Act. See *Technical Tape Corp. v. Industrial Comm'n*, 58 Ill. 2d 226, 230, 317 N.E.2d 515, 517 (1974). This occurs if some act or phase of the employment was a causative factor in the ensuing injury. *Interlake, Inc. v. Industrial Comm'n*, 86 Ill. 2d 168, 173, 427 N.E.2d 103, 105 (1981).

■ AC & S argues, and the circuit court agreed, a repetitive-trauma injury does not occur in the course of employment if the manifestation date is after employment is terminated for non-health-related reasons. We disagree. The modern rule allows compensation even when an injury occurs at a time and place remote from the employment if its cause is something that occurs entirely within the time and place limits of employment. 2 L. Larson, Larson's Workers' Compensation Law § 29.22, at 5—531 (1998).

■ Repetitive-trauma injuries occupy an odd niche between accidental injury, compensable under the Act, and occupational disease,

compensable under the Workers' Occupational Diseases Act (Occupational Diseases Act) (820 ILCS 310/1 *et seq.* (West 1992)). Compare *Luttrell v. Industrial Comm'n*, 154 Ill. App. 3d 943, 956, 507 N.E.2d 533, 542 (1987) (carpal tunnel syndrome is an accidental injury, not a disease), with *Smith v. Colonial Bank*, 578 So. 2d 1364, 1366 (Ala. Civ. App. 1991) (gradual deterioration is not an injury, remand to determine if it is an occupational disease); *cf. Delta Drywall v. Industrial Claim Appeals Office*, 868 P.2d 1155, 1158 (Colo. Ct. App. 1993) (carpal tunnel may be either, depending on the context).

In choosing to cover such injuries as accidental injuries, and not as occupational diseases, the supreme court had to modify the standards for determining the date of injury. In repetitive-trauma cases, the manifestation date is significant in fixing the legal relationships between the parties. See *Oscar Mayer & Co. v. Industrial Comm'n*, 176 Ill. App. 3d 607, 611, 531 N.E.2d 174, 176 (1988); 3 L. Larson, Larson's Workers' Compensation Law § 39.10, at 7—383 (1998). However, in making this change, the supreme court did not intend to give employers an additional shield by requiring the injury to be traced to employment during employment. *Cf. Belwood*, 115 Ill. 2d at 529, 505 N.E.2d at 1028 (liberally construing the Act to further its goal of providing financial protection for injured workers while precluding the employee from seeking common law tort remedies).

Even though carpal tunnel syndrome is not treated as an occupational disease in Illinois, we still look to the Occupational Diseases Act for guidance. See 3 L. Larson, Larson's Workers' Compensation Law § 39.60, at 7—447 (1998) (it is impossible to disassociate the state of the law governing gradual injuries under workers compensation acts from occupational disease acts). In *General Steel Industries v. Industrial Comm'n*, 49 Ill. 2d 552, 554, 276 N.E.2d 290, 292 (1971), the supreme court held an employer was liable under the Occupational Diseases Act even though the claimant had retired four months before his work-related anthracosilicosis became apparent. See also *Kaleita v. Evans Greenaway, Inc.*, 15 A.D.2d 979, 979, 225 N.Y.S.2d 580, 581-82 (1962) (allowing compensation for contact dermatitis as an occupational disease, even though it became manifest several months after claimant left the employer and claimant had worked for other employers in the interim).

In support of its contention that the manifestation date is required to fall during employment, AC & S cites *Oscar Mayer, Three "D" Discount Store*, and *Castaneda v. Industrial Comm'n*, 231 Ill. App. 3d 734, 596 N.E.2d 1281 (1992). These cases address problems in defining the manifestation date, not the issue of whether the manifestation date must fall within actual employment. Each of these cases found a

manifestation date within the dates of employment. However, to the extent these cases are relevant, they suggest a flexible approach here.

For example, though *Oscar Mayer* reinstated a Commission finding that an injury was manifest on the last day of employment, the opinion went on to state:

"Nothing we say here should be interpreted as establishing an inflexible rule. Just as we reject respondent's contention the date of discovery of the condition and its relation to the employment necessarily fixes the date of the accident, we reject any interpretation of this opinion which would permit the employee to always establish the date of the accident in a repetitive-trauma case by reference to the last date of work." *Oscar Mayer*, 176 Ill. App. 3d at 612, 531 N.E.2d at 177.

*Oscar Mayer* implies a manifestation date could be set beyond employment. See also *Castaneda*, 231 Ill. App. 3d at 738, 596 N.E.2d at 1284 ("It is thus clear that a claimant's last day of exposure to repetitive trauma is not, in and of itself, the day of accident for the purposes of repetitive injury cases").

AC & S argues allowing compensation here is in conflict with the statute of limitations under the Act (820 ILCS 305/6(d) (West 1992)). That provision allows a claim to be brought within three years of the date of the accident, or two years of the last date of compensation, whichever is later. 820 ILCS 305/6(d) (West 1992). The manifestation date is the date of the accident for purposes of the statute of limitations and notice requirements. See *Zion-Benton Township High School District 126 v. Industrial Comm'n*, 242 Ill. App. 3d 109, 115, 609 N.E.2d 974, 979 (1993). AC & S argues this statute would provide no protection against stale claims if the manifestation date could fall long after the employee stopped working for the employer.

■ We acknowledge that, in recognizing a claim for repetitive-trauma injury under the Act, Illinois has exposed employers to the risk of stale claims. We will not impose an arbitrary limit on otherwise compensable repetitive-trauma claims by requiring the manifestation date to fall within employment. The time period here, 12 days, was not stale.

Until such time as the legislature specifically addresses repetitive-trauma claims, the employer's protection against stale claims lies in the requirement that a claimant must establish his injury is work related (*Nunn v. Industrial Comm'n*, 157 Ill. App. 3d 470, 476, 510 N.E.2d 502, 505 (1987)) and that the manifestation date be set at the first time the injury and its relationship to employment become plainly apparent. The longer the delay between employment and the alleged manifestation date, the harder it is to prove causation and that the

employee did not have prior notice of the injury and its relationship to employment.

AC & S argues allowing a manifestation date after employment has ended would defeat the purpose of requiring prompt notice, which is to allow the employer to investigate the alleged accident. *Gano Electric Contracting v. Industrial Comm'n*, 260 Ill. App. 3d 92, 95, 631 N.E.2d 724, 727 (1994). This concern may warrant some limit on liability, but it is not presented here. Claimant's June 22, 1993, notice would have been sufficient even if the manifestation date had been the last date of employment.

■ AC & S next argues the Commission's decision was not supported by the evidence. Though the circuit court did not reach this issue, we decline to remand. The issue was fully briefed and argued on appeal and the circuit court on remand would be in the same posture as this court: either court is bound to affirm the findings of the Commission as long as they are not against the manifest weight of the evidence. See *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005, 1008 (1987).

Both parties agree that claimant suffers from carpal tunnel syndrome and that this was caused by repetitive stress due to his employment as an insulation installer. The primary factual dispute is whether claimant's condition is attributable to his work for AC & S or his work for other employers. The evidence was sufficient to support the Commission's findings that the work for AC & S caused the injury. It is the role of the Commission to resolve conflicting testimony and determine the credibility of witnesses. *Scott v. Industrial Comm'n*, 76 Ill. 2d 183, 184-85, 390 N.E.2d 906, 907 (1979). Claimant's testimony that his pain started after he started working for AC & S is consistent with much of Schlenker's testimony. Claimant and Kerns both testified the work for AC & S was not a normal job for insulation installers, and that it involved unusually heavy equipment and unusually long hours.

That claimant's prior work as an insulation installer may have predisposed him to this type of injury is a factor to be considered. However, an employer is not relieved of liability because the injury arose from a preexisting condition. *Illinois Valley Irrigation, Inc. v. Industrial Comm'n*, 66 Ill. 2d 234, 240, 362 N.E.2d 339, 342 (1977). Employers take their employees as they find them. *General Electric Co. v. Industrial Comm'n*, 89 Ill. 2d 432, 434, 433 N.E.2d 671, 672 (1982).

Nor does the evidence that claimant continued to work as an insulation installer after his work for AC & S foreclose recovery. There was no evidence his brief work before seeking medical treatment had

any effect on the diagnosis. The Commission could also properly consider that claimant made his appointment with Schlenker before he left AC & S.

■ Finally, the record supports the Commission's finding that adequate notice was given. Under the Act, an employee must give notice to the employer as soon as practicable, and no later than 45 days after the date of the accident. 820 ILCS 305/6(c) (West 1992). The sufficiency of the notice is an issue of fact, and the Commission's findings regarding the credibility of witnesses on this point are entitled to deference. *Moore Electric Co. v. Industrial Comm'n*, 83 Ill. 2d 43, 47-48, 413 N.E.2d 1262, 1265 (1980).

Claimant testified he was present when Schlenker's secretary called on AC & S' representative and told him of the injury on June 22, 1993. Heubrich's testimony that he received a phone call about the injury after claimant was laid off supports a finding that AC & S was given notice. *Cf. Crow's Hybrid Corn Co. v. Industrial Comm'n*, 72 Ill. 2d 168, 172-73, 380 N.E.2d 777, 779 (1978) (phone call from claimant's wife to employer was sufficient to give the employer notice of the injury).

For the above reasons, we reverse the decision of the circuit court and reinstate and affirm the decision of the Commission.

Circuit court reversed; Commission decision reinstated and affirmed.

RAKOWSKI, COLWELL, HOLDRIDGE and RARICK, JJ., concur.