Industrial Commission Division

March 9, 1999

1-98-0700WC

IN THE APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

Industrial Commission Division

A.C. & S., ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Cook County

THE INDUSTRIAL COMMISSION et al. ) No.  97L50332

(Nick Delessio), )

Defendants-Appellants. ) Honorable

) Alexander P. White,

) Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

This is an appeal by Nick Delessio, claimant, from a decision of the circuit court of Cook County that reversed the March 4, 1997, decision of the Industrial Commission (Commis­

sion).  The arbitrator, on March 6, 1995, found that claimant's date of accident fell outside the time period claimant was employed by respondent A.C. & S. (AC & S).  The Commis­sion reversed the arbi­trator and granted the claimant 9 3/7 weeks temporary total disability (TTD), and compen­sation under section 8(e) of the Workers' Compensation Act (820 ILCS 305 (West 1992)) (Act) for 47 1/2 weeks, repre­senting 10% loss of use of the right hand and 15% loss of use of the left hand and medical expenses.

On Febru­ary 5, 1998, the circuit court re­versed the Commis­sion, con­clud­ing, as a matter of law, that the manifes­ta­

tion date must occur during employment.  We reverse the circuit court and affirm the Commission.

Claimant started working for AC & S on Febru­ary 24, 1993.  He per­formed similar work, installing heat and frost insula­tion, for almost 22 years prior to his work there.  Immedi­

ately before working for AC & S, claimant had worked as an 

insula­tion install­er for Univer­sal Insula­tion and MVP Insula­tion, though this was lighter work, on a smaller scale.  He testi­fied the AC & S job was atypi­cal because it in­volved moving heavier materials than usual, and it required him to wear a fire suit and full body har­ness, which weighed 10 to 15 pounds.  While claim­ant normally worked 40 hours per week, this job required him to work six to seven days a week for 10 hours per day.  James Kerns, a coworker, veri­fied that this was a special "heavy industrial" job involving special equip­ment, and longer hours, up to 12 hours per day for six or seven days a week.  

According to claimant, he began experiencing numbness, tingling and aching in both hands in the Spring of 1993.  He testified he had no such symptoms before he started working for AC & S.  He did not tell anyone in manage­ment about his problems with his hands, and he re­ceived no medical treat­ment during his tenure at AC & S.  According to Jeff Heubrich, AC & S' safety manag­er, claimant never filed an injury report, and he never missed work.  Jerry Stolarz, the project manager for AC & S, testi­fied he was never informed of any injury or work restric­

tions involv­ing claimant and did not recall claimant missing any work.

Claimant was laid off on June 10, 1993.  Stolarz testi­

fied the layoff was not for medical reasons, and several other people were also laid off.  Claimant immedi­ate­ly found a full-

time job with Commer­cial Insulators (Commer­cial).  He testified he was doing similar work, but on a smaller scale.  

On June 17, 1993, claimant was seen by Dr. James Schlenker, a hand surgeon, about pains in his hand.  Claimant testi­fied this appointment was made in April 1993.  Schlenker testi­fied that it typically takes two to four weeks to get an appoint­ment with him.  On June 22, 1993, Schlenker told claimant he suffered from carpal tunnel syn­drome.

According to Schlenker's deposition, claimant was predis­posed to having carpal tunnel syndrome before working at AC & S.  Schlenker testi­fied claimant had a preexist­ing condi­tion due to his long history of repeti­tive work, and this condi­tion became symptomatic when it was aggra­vat­ed by his work for AC & S.  Accord­ing to Schlenker's report, claimant told him he had had hand symp­toms for six months.  This period would have started two months before claimant started working for AC & S.  Claimant testi­fied he did not recall this statement, and if he made it, it was incor­rect.  Schlenker testi­fied it was possi­ble claimant suf­

fered from symptoms of carpal tunnel syn­drome before his employ­

ment with AC & S.  Howev­er, Schlenker testified claim­ant told him his symp­toms began about a month after he started working for AC & S, and Schlenker be­lieved this to be true.

Claimant testified he notified AC & S of his condition on June 22, 1993.  Specifi­cally, he gave Schlenker's secre­tary the phone number of AC & S, and he was present when she called the AC & S office.  Heubrich testi­fied his first notice of an injury was from a phone call after claimant was laid off.  Claimant contin­ued to work for Commer­cial until he had carpal tunnel surgery on his left hand on Septem­ber 11, 1993.  Claimant con­tends he was temporarily totally dis­abled until he was re­

leased for work on Novem­ber 15, 1993. 

On March 4, 1997, the Commission found claimant sus­

tained an acciden­tal inju­ry arising out of his employ­ment on June 22, 1993.  The Commis­sion concluded the injury would have become plainly appar­ent to a reasonable person on this date.  It con­

cluded the date the injury became mani­fes­t need not be within the period of employ­ment, and there was a causal connec­tion between his activi­ties at AC & S and the fact claimant's carpal tunnel syndrome became symptom­at­ic.  The Commis­sion found timely notice and awarded claimant permanent partial disability (PPD) benefits, medical expens­es, TTD bene­fits, and interest.  On February 5, 1998, the circuit court reversed the Commis­sion, holding the manifesta­tion date must be during the period of employment for an employee to recover under the Act.  

An employee who suffers a gradual injury due to repeti­

tive trauma is eligi­ble for bene­fits under the Act, but he must meet the same standard of proof as a petitioner alleging a single, definable accident.  
Three "D" Discount Store v. Indus­

trial Comm'n, 
198 Ill. App. 3d 43, 47, 556 N.E.2d 261, 264 (1989).  Proof that the relationship of employer and employee existed at the time of the accident is one of the elements of an award under the Act.  
Beletz v. Indus­trial Comm'n, 
42 Ill. 2d 188, 192, 246 N.E.2d 262, 265 (1969).  The date of the acci­den­tal injury in a repeti­tive-trauma case is the date on which the injury "mani­fests it­self."  
Peoria County Belwood Nursing Home v. Industrial Comm'n, 
115 Ill. 2d 524, 531, 505 N.E.2d 1026, 1029 (1987).  

The Commission set the manifes­tation date at June 22, 1993, the date Schlenker told claimant of his diagnosis.  The manifesta­tion date is the date on which both the fact of the injury and the causal rela­tionship of the injury to the claimant's employ­ment would have become plainly appar­ent to a reason­able person.  
Belwood, 
115 Ill. 2d at 531, 505 N.E.2d at 1029.  

The principal issue before us is whether the trial court correctly held, as a matter of law, that the mani­fes­tation date must occur during employ­ment.  Because this is an issue of law, we review the trial court's decision 
de novo.  
See 
Bommarito v. Indus­tri­al Comm'n, 
82 Ill. 2d 191, 194, 412 N.E.2d 548, 549 (1980).  The injury must arise "out of" and "in the course of" employ­ment to be compen­sable under the Act.  See 
Technical Tape Corp. v. Indus­tri­al Comm'n, 
58 Ill. 2d 226, 230, 317 N.E.2d 515, 517 (1974).  This occurs if some act or phase of the employ­ment was a causative factor in the ensuing injury.  
Interlake, Inc. v. Indus­tri­al Comm'n, 
86 Ill. 2d 168, 173, 427 N.E.2d 103, 105 (1981).  

AC & S argues, and the circuit court agreed, a repeti­

tive-trauma injury does not occur in the course of employ­ment if the manifes­tation date is after employment is termi­nated for non-

health-related reasons.  We disagree.  The modern rule allows compensation even when an injury occurs at a time and place remote from the employment if its cause is something that occurs entirely within the time and place limits of employment.  2 L. Larson, Larson's Workers' Compensation Law §29.22, at 5-531 (1998).  

Repetitive-trauma injuries occupy an odd niche between acci­den­tal injury, compensable under the Act, and occupa­tional dis­ease, compen­sa­ble under the Workers' Occupa­tion­al Diseas­es Act (Occupational Diseases Act) (820 ILCS 310/1 
et seq. 
(West 1992)).  
Compare Luttrell v. Industrial Comm'n, 
154 Ill. App. 3d 943, 956, 507 N.E.2d 533, 542 (1987) (carpal tunnel syndrome is an acci­

dental injury, not a disease), with 
Smith v. Colonial Bank, 
578 So. 2d 1364, 1366 (Ala. Civ. App. 1991) (gradual deteriora­tion is not an injury, remand to deter­mine if it is an occupa­tional disease); 
cf. Delta Drywall v. Indus­tri­al Claim Appeals Office, 
868 P.2d 1155, 1158 (Colo. Ct. App. 1993) (carpal tunnel may be either, depending on the con­text).

In choosing to cover such injuries as accidental injuries, and not as occupational diseases, the supreme court had to modify the standards for determining the date of injury.  In repetitive-trauma cases, the manifestation date is signif­icant in fixing the legal rela­tion­ships between the par­ties.  See 
Oscar Mayer & Co. v. Indus­trial Comm'n, 
176 Ill. App. 3d 607, 611, 531 N.E.2d 174, 176 (1988); 3 L. Larson, Workers' Compen­sa­tion Law §39.10, at 7-383 (1998).  However, in making this change, the supreme court did not intend to give employ­ers an additional shield by requir­ing the injury to be traced to employ­ment during employ­ment.  
Cf. Belwood, 
115 Ill. 2d at 529, 505 N.E.2d at 1028 (liberal­ly con­struing the Act to further its goal of provid­ing finan­cial protection for injured workers while preclud­ing the employee from seeking common law tort remedies).

Even though carpal tunnel syndrome is not treated as an occupational disease in Illinois, we still look to the Occupa­

tion­al Diseases Act for guidance.  See 3 L. Larson, Workers' Compen­sa­tion Law §39.60, at 7-447 (1998) (it is impossi­ble to disas­so­ci­ate the state of the law governing gradual injuries under workers compen­sation acts from occupational disease acts).   In 
General Steel Indus­tries v. Indus­tri­al Comm'n, 
49 Ill. 2d 552, 554, 276 N.E.2d 290, 292 (1971), the supreme court held an employer was liable under the Occupational Diseases Act even though the claimant had retired four months before his work-

related anthra­cosilicosis became apparent.  See also 
Kaleita v. Evans Greenaway, Inc., 
15 N.Y.2d 979, 225 N.Y.S.2d 580, 581-82 (1962) (allow­ing compensation for contact dermatitis as an occupational disease, even though it became manifest several months after claimant left the employer, and claimant had worked for other employers in the interim).

In support of its contention that the mani­fes­ta­tion date is re­quired to fall during employment, AC & S cites 
Oscar Mayer, Three "D" Discount Store, 
and 
Castaneda v. Industri­al Comm'n, 
231 Ill. App. 3d 734, 596 N.E.2d 1281 (1992).  These cases address prob­lems in defin­ing the mani­fes­ta­tion date, not the issue of whether the manifes­ta­tion date must fall within actual employ­ment.  Each of these cases found a manifestation date within the dates of employment.  Howev­er, to the extent these cases are rele­vant, they suggest a flexible approach here.

For example, though 
Oscar Mayer 
rein­stated a Commission finding that an injury was manifest on the last day of employ­

ment, the opinion went on to state:

"Nothing we say here should be interpreted as establishing an inflexi­ble rule.  Just as we re­ject respondent's contention the date of discovery of the condition and its relation to the employment necessarily fixes the date of the accident, we reject any inter­pretation of this opinion which would permit the em­

ploy­ee to al­ways establish the date of the accident in a re­petitive-trauma case by ref­

erence to the last day of work."  
Oscar Mayer, 
176 Ill. App. 3d at 612, 531 N.E.2d at 177.

Oscar Mayer 
implies a manifestation date could be set beyond employ­ment.  See also 
Castaneda, 
231 Ill. App. 3d at 738, 596 N.E.2d at 1284 ("It is thus clear that a claimant's last day of exposure to repetitive trauma is not, in and of itself, the day of acci­dent for the purposes of repetitive injury cases").

AC & S argues allowing compen­sation here is in con­flict with the statute of limita­tions under the Act (820 ILCS 305/6(d) (West 1992)).  That provision allows a claim to be brought within three years of the date of the accident, or two years of the last date of compensation, whichever is later.  820 ILCS 305/6(d) (West 1992).  The mani­fes­ta­tion date is the date of the acci­dent for purpos­es of the statute of limita­tions
 
and notice require­

ments.  See 
Zion-Benton Township High School District 126 v. Industrial Comm'n, 
242 Ill. App. 3d 109, 115, 609 N.E.2d 974, 979 (1993).  AC & S argues this statute would provide no protec­tion against stale claims if the mani­fes­tation date could fall long after the employ­ee stopped working for the employ­er.   

We acknowledge that, in recognizing a claim for repeti­

tive-trauma injury under the Act, Illinois has exposed employers to the risk of stale claims.  We will not impose an arbitrary limit on other­wise compensable repetitive-trauma claims by requir­ing the manifestation date to fall within employment.  The time period here, 12 days, was not stale.

Until such time as the legis­la­ture specif­ically ad­

dress­es repeti­tive-trauma claims, the employer's protec­tion against stale claims lies in the require­ment that a claimant must estab­lish his injury is work-related (
Nunn v. Illi­nois Industri­al Comm'n, 
157 Ill. App. 3d 470, 476, 510 N.E.2d 502, 505 (1987)) and that the manifestation date be set at the first time the injury and its relationship to employ­ment become plainly appar­

ent.  The longer the delay between employment and the alleged manifes­tation date, the harder it is to prove causa­tion, and that the employ­ee did not have prior notice of the injury and its rela­tionship to employment.  

AC & S argues allowing a manifestation date after employ­ment has ended would defeat the purpose of requiring prompt notice, which is to allow the employ­er to investigate the alleged acci­dent.  
Gano Electric Contracting v. Industrial Comm'n, 
260 Ill. App. 3d 92, 95, 631 N.E.2d 724, 727 (1994).  This concern may warrant some limit on liability, but it is not presented here.  Claimant's June 22, 1993, notice would have been suffi­

cient even if the manifes­tation date had been the last date of employment.  

AC & S next argues the Commission's decision was not supported by the evidence.  Though the circuit court did not reach this issue, we decline to remand.  The issue was fully briefed and argued on appeal and the circuit court on remand would be in the same posture as this court:  either court is bound to affirm the find­ings of the Commission as long as they are not against the manifest weight of the evidence.  See 
Orsini v. Indus­trial Comm'n, 
117 Ill. 2d 38, 44, 509 N.E.2d 1005, 1008 (1987).    

Both parties agree that claimant suffers from carpal tunnel syn­drome, and that this was caused by repeti­tive stress due to his employment as an insulation in­staller.  The primary factual dispute is whether claimant's condition is attributable to his work for AC & S or his work for other employ­ers.  The evidence was sufficient to support the Commission's find­ings that the work for AC & S caused the injury.  It is the role of the Commis­sion to resolve con­flict­ing testimo­ny and determine the credibil­ity of witnesses.  
Scott v. Industrial Comm'n, 
76 Ill. 2d 183, 184-85, 390 N.E.2d 906, 907 (1979).  Claimant's testimony that his pain started after he started working for AC & S is consis­tent with much of Schlenker's testimo­ny.  Claimant and Kerns both testi­fied the work for AC & S was not a normal job for insulation in­stall­ers, and that it involved unusually heavy equipment and unusu­ally long hours.

That claimant's prior work as an insula­tion install­er may have predis­posed him to this type of injury is a factor to be considered. However, an employ­er is not relieved of liability because the injury arose from a preexist­ing condi­tion.  
Illinois Valley Irriga­tion, Inc. v. Indus­trial Comm'n, 
66 Ill. 2d 234, 240, 362 N.E.2d 339, 342 (1977).  Employ­ers take their employ­ees as they find them.  
General Electric Co. v. Industri­al Comm'n, 
89 Ill. 2d 432, 434, 433 N.E.2d 671, 672 
(1982).

Nor does the evidence that claimant contin­ued to work as an insula­tion installer after his work for AC & S foreclose recovery.  There was no evidence his brief work before seeking medical treatment had any effect on the diagnosis.  The Commis­

sion could also properly consider that claimant made his ap­point­

ment with Schlenker before he left AC & S.

Finally, the record supports the Commission's finding that adequate notice was given.  Under the Act, an employee must give notice to the employer as soon as practicable, and no later than 45 days after the date of the acci­dent.  820 ILCS 305/6(c) (West 1992).  The sufficiency of the notice is an issue of fact, and the Commission's findings regarding the credibility of witnesses on this point are entitled to deference.  
Moore Elec­

tric Co. v. Industrial Comm'n, 
83 Ill. 2d 43, 47-48, 413 N.E.2d 1262, 1265 (1980).

Claimant testi­fied he was present when Schlenker's secretary called on AC & S' repre­senta­tive and told him of the injury on June 22, 1993.  Heubrich's testi­mony that he received a phone call about the injury after claimant was laid off supports a finding that AC & S was given notice.  
Cf. Crow's Hybrid Corn Co. v. Industrial Comm'n, 
72 Ill. 2d 168, 172-73, 380 N.E.2d 777, 779 (1978) (phone call from claimant's wife to employer was sufficient to give the employer notice of the injury).

For the above reasons, we reverse the decision of the circuit court and reinstate and affirm the deci­sion of the Commis­sion.

Circuit court re­versed; Commission decision reinstated and affirmed.

RAKOWSKI, COLWELL, HOLDRIDGE and RARICK, JJ., concur­

ring.